MYERS v. SOLOMON.

1. ATTORNEY AND CLIENT—SOLICITED EMPLOYMENT.
   In proceeding to have an attorney's lien declared on amount for which cases were settled, evidence *held*, to establish that personal injury litigation was solicited in direct violation of statute rendering contract for services by attorney wholly void where induced by solicitation (3 Comp. Laws 1929, § 13600).

2. SAME—BURDEN OF PROOF OF GOOD FAITH.
   In proceeding to collect attorney fees, attorney has burden of proof that agreement for contingent fee in personal injury litigation was duly made in good faith (3 Comp. Laws 1929, § 13600).

Appeal from Wayne; Richter (Theodore J.), J. Submitted June 13, 1935. (Docket No. 62, Calendar No. 38,395.) Decided September 9, 1935.

Separate actions of case by Auben Byron Myers, Archie Myers, and L. Irene Myers against Jack Solomon for injuries sustained in an automobile collision. On petition of Herman J. Saulson to have a lien declared for portion of settlement in these cases and judgment therefor. From judgment for petitioner, defendant appeals. Reversed, without new trial.

*Walter Schweikart* and *Julien Winterhalter,* for petitioner.

*Kerr, Lacey & Scroggie,* for defendant.

BUTZEL, J. The petition of Herman J. Saulson for attorney's fees was allowed in the three cases brought respectively by Auben B. Myers, Archie

Myers and L. Irene Myers, plaintiffs, against Jack Solomon, defendant. The cases were consolidated and tried together. Defendant was injured in an automobile accident in Florida when his car collided with the car of Auben B. Myers while it was being driven by his son, Archie Myers, and his wife, L. Irene Myers, was a passenger. The car was badly damaged and Archie Myers and L. Irene Myers suffered physical injuries, Archie losing an eye. Defendant carried two policies in the Columbia Casualty Company, one indemnifying in case of loss of health or accident, and the other protecting against public liability and property damage. He brought suit through Sol Blumrosen, an attorney of Detroit, on his health and accident policy, claiming the sum of $775 due him at the time the suit was begun, and naming his damages at $1,000 in the *ad damnum* clause of his declaration. The insurance company in its answer neither admitted nor denied that plaintiff had an accident, medical and hospital expenses, but left him to his proofs. It claimed, however, that neither notice or proof of claim were given nor suit begun according to the terms of the policy.

Blumrosen claimed that he deemed it necessary to go south to obtain the required proofs. He first went to Eutaville, South Carolina, plaintiffs' home, and then to Florida, the scene of the accident, notwithstanding the fact that the claim, being of a comparatively small amount, might probably have been proven with a minimum of expense by Solomon's testimony supplemented by depositions showing the hospital record and any other pertinent facts. Blumrosen testified that when he went south he did not know that his client, Solomon, had a public liability and property damage policy; that he first stopped off at Eutaville, where he approached the Myers family and asked the details of the accident;

that they asked him in return for the name of a good lawyer in Detroit to prosecute their claims; that he thereupon wrote down the name of Herman J. Saulson, the petitioner; that he arranged for a member of the Myers family to come to Detroit to testify; that then he went to Jacksonville, Florida, to secure a copy of Solomon's card of admission to the hospital, properly sworn to; that he then visited the police station to get further facts, and after making a final investigation, returned to Detroit. He further testified that Saulson rents office space from him,. that he has two large rooms in an office building and also has another tenant; that he did not tell Saulson the reason for the trip south; that he had nothing to do with the preparation of the letter sent retaining Saulson; that he did not have the public liability policy with him, but did have an affidavit made by Solomon in support of a motion to advance the case of Solomon *v.* Columbia Casualty· Company, in which affidavit Solomon stated that he was destitute and dependent upon public and private charity for support. It is significant that this affidavit was subscribed and sworn to by Solomon before Saulson acting as notary public, on November 1, 1933.

Affidavits of L. Irene Myers, Auben B. Myers and Archie Myers, by stipulation of the parties, were given the force of depositions and are a part of the record. The affidavit of L. Irene Myers, the mother of Archie Myers, sets forth that a man answering Blumrosen's description drove up to their home, asked if she had been in the accident; stated that he was satisfied he would get some money for them without any expense; that he said he had Solomon's insurance policy; that she told him she had already retained a lawyer and had signed a paper to that effect. The affidavit of Auben B. Myers states

that on the day Blumrosen visited his home he said that he knew Solomon, had found out about the accident, had Solomon's insurance policy in his pocket and could get some money for the Myers family; that he represented Solomon in a case against the Columbia Casualty Company and that he would arrange for Saulson to represent Archie Myers, who had been more seriously injured; that Auben B. Myers told Blumrosen that he had retained a lawyer in Jacksonville, Florida, but that the lawyer had never done anything on the case and he did not know whether he was doing anything; that Blumrosen stated that he could get around this fact without any difficulty and would like to see Archie Myers; that they then went to Columbia, S. C., where Archie was employed and Blumrosen told Archie he was a lawyer from Detroit and could get him some money for the accident; that he represented Solomon and could not represent Archie, but that his "partner" Saulson would represent him; that he again repeated that he had Solomon's policy, and upon a request to show it, pulled out two policies in the Columbia Casualty Company and Myers read the public liability policy for $5,000; that Blumrosen dictated a letter to Archie Myers addressed to Saulson in Detroit; that Auben B. Myers read the letter after Archie transcribed it; that the lawyer they had retained in Jacksonville was the counsel for the Jacksonville Electric Company, Auben B. Myers' former employer. The affidavit of Archie Myers largely corroborates that of his father. He also states that Blumrosen solicited the case "for his partner Saulson" and would see to it that Saulson handled the matter all right.

Saulson testified that he received a letter dated November 17, 1933, from Archie Myers, directing him to take the case against Solomon, giving a short

account of the accident and stating that Saulson should take the case on a half and half basis, without any liability on Myers' part for legal fees or court expenses; that if Saulson took the case he should write at once; that the letter would constitute a contract and also give Saulson a lien on the case to protect his interests. It also directed that suit be instituted for his father for the loss of the car and for his mother for her injuries. Saulson stated that he had been renting an office from Blumrosen for five or six years; that he appeared as counsel with Blumrosen in the trial of cases, and when asked how many, said: "Three or four, maybe a few more or less. I don't remember." He stated that he knew nothing about Blumrosen's purpose or destination in going south, nor did he know anything about the accident before he received the letter, nor did he remember whether he possibly knew about the litigation before that time. He, however, stated that he did not talk with Blumrosen concerning any feature of the litigation against the Columbia Casualty Company until he filed his petition for fees. He further testified that the office he rents from Blumrosen has a common entrance, with the names of Blumrosen and himself on the door; that they use one library belonging to Blumrosen, have one secretary, one telephone with listings of both attorneys, but that he conducts his independent practice; that he told Blumrosen of the receipt of the letter of retainer, but did not remember what Blumrosen said. Again when pressed for an answer as to whether Blumrosen had discussed the accident or any litigation upon his return from the trip, he stated:

"I have no recollection of it. He may have discussed it in the office."

The insurance company settled all three cases direct with the Jacksonville attorney for the Myers family and paid no attention whatsoever to Saulson. The latter filed the petition for fees, claiming $500, one-half of the amount that the three cases were settled for. The trial judge rendered judgment in Saulson's favor. While as a rule on a question of fact we prefer to adopt the opinion of the trial judge, who has had the advantage of seeing the witnesses and judging their credibility, we cannot overlook the fact that the judge was not present when the Myers family made their affidavits, nor are we impressed with the testimony offered by petitioner. The letter written by Archie Myers does not bear the earmarks of having been composed by an inexperienced layman, nor are we impressed with the propriety of Blumrosen even indirectly instituting the litigation against his own client. The statements of Myers and his son that Blumrosen displayed the public liability and property damage policy appear to be true. It further seems improbable that two men so closely associated as these two attorneys were, would not fully discuss all the facts and circumstances in regard to the case prior to the filing of the instant petition for fees. Saulson testified that he never met Solomon until after the petition for fees was filed. We cannot reconcile this with the fact that he had taken Solomon's affidavit within a fortnight from the time he received the letter of retainer. We need not discuss other facts and circumstances. A careful reading of the record impels us to the conclusion that the claim was solicited in direct violation of 3 Comp. Laws 1929, § 13600, which provides that a contract for attorney's fees shall be wholly void if the employment has been induced by the soliciting of an attorney or

counselor, or any one acting in his behalf or at his request, without such services having first been sought by the party retaining the attorney. When an action is brought for attorney fees upon an agreement of this nature, it is incumbent on plaintiff or petitioner to show that the agreement was duly made in good faith. *Grand Rapids & Indiana R. Co. v. Cheboygan Circuit Judge,* 161 Mich. 181 (137 Am. St. Rep. 495). Also, see, *Boyle v. Waters,* 206 Mich. 515. Petitioner as the real plaintiff in the present proceeding has not met the burden of showing that the contract was not one forbidden by law and that it was not contrary to the provisions of 3 Comp. Laws 1929, § 13600. He therefore cannot recover.

The judgment is herewith set aside without further hearing. Defendant insurance company will recover costs.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.