STATE of Missouri ex rel. John C. DANFORTH, Attorney General, Plaintiff-Appellant,

v.

W. E. CONSTRUCTION COMPANY and Floyd Edwin Harris, Defendants-Respondents.

No. 37438.

Missouri Court of Appeals, St. Louis District, Division Four.

May 17, 1977.

Motion for Rehearing or Transfer Denied June 9, 1977.

Application to Transfer Denied July 11, 1977.

John Ashcroft, Atty. Gen., Jefferson City, G. Michael Bauer, William L. Newcomb, Jr., Asst. Attys. Gen., St. Louis, for plaintiff-appellant.

Pannell & Robinson, R. J. Robinson, Festus, for defendants-respondents.

NORWIN D. HOUSER, Special Judge.

Proceeding by the attorney general under the Merchandising Practices Act, Chap. 407, RSMo 1969, against W. E. Construction Company, a corporation, and its president and chief stockholder, Floyd Edwin Harris, for injunctive relief. Following a six-day trial the court granted an injunction against the corporate defendant but not against the individual defendant. The attorney general appealed on behalf of the State, contending that the court erred in not enjoining the individual defendant.

Defendants developed several subdivisions in Jefferson County, platting and grading the land, building streets and constructing more than 100 homes, sold to the public through real estate agents.

The petition alleged and the issue tried was whether in connection with the sale,

offer for sale and advertisement of dwelling houses and real estate defendants and their agents and employees used or employed deception, false promises, false advertising and misrepresentation, and concealed, suppressed and omitted material facts in their selling activities.

The trial court found that the corporation engaged the real estate agencies whose representatives made representations to purchasers of homes in the Quail Run Subdivisions (1) that their homes would be completed by specified dates, but they were not completed by the dates promised; (2) that Partridge Drive would be a dead-end street, which it was not; (3) that the streets in the subdivision would be constructed of concrete, but that they were rolled asphalt.

The trial court found that defendant Harris promised purchasers named Wibbenmeyer that the corporation would assist them in moving into their new home in Quail Run Subdivision, but did not honor this promise; that he represented to two other purchasers of homes in the subdivision that Partridge Drive would be a dead-end street; and that he promised the Harpers, who were dissatisfied with their purchase, that the corporation would build another home for them, but it was not built.

The court found the foregoing facts constituted violations of Chapter 407 "as against defendant W. E. Construction Company only but not against defendant Harris"; found the issues for plaintiff and against the corporation and for defendant Harris and against plaintiff, and entered judgment enjoining the corporation from promising or representing that a house will be completed or that a purchaser can close on a home by a certain date, or that dead-end streets will be built in subdivisions developed by the corporation, or that streets or roads in a subdivision built by the corporation will be concrete, unless such promises or representations are true.

We are not concerned on this appeal with the propriety of the findings and judgment against the corporation, since there is no appeal from the judgment against the corporation. We are concerned only with the propriety of the denial of injunctive relief against the individual defendant.

Appellant raises these points: that the court erred in concluding that defendant Harris did not violate the Act and in failing to issue an injunction against him, because under the statutory definitions in § 407.010, the evidence, and the court's own findings of fact Harris' guilt of wrongdoing is demonstrated; that the State's evidence and the law support an order to protect the public interest, based on Harris' personal wrongdoing and his position as principal stockholder and president of a corporation found guilty of wrongdoing; and that the court erred in concluding that the element of intent is a necessary component for a finding of a violation of the Act. Respondent contravenes these points and contends that under the standard of review prescribed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), the judgment should be sustained as to defendant Harris.

We do not reach the merits of this appeal for the reason that an overriding consideration demonstrates that there is no basis for injunctive relief.

 Section 407.100, RSMo 1969, provides that if the court finds that a person has engaged or is engaging in any method, act, or practice declared to be unlawful by sections 407.010 to 407.130 "it *may* make such orders or judgments as may be necessary * * * to prevent the use of [or?] employment by such person of any prohibited methods, acts, or practices, * * *." (Our italics.) The language is not mandatory. Under § 407.100 the court is not *required* to issue an injunction; it is discretionary with the court. The statute follows the general law that an injunction is not a matter of right but its granting rests in the sound discretion of the court, to be exercised in accordance with well-settled equitable principles and in the light of all the facts and circumstances in the case. *State ex rel. Ellis v. Creech,* 364 Mo. 92, 259 S.W.2d 372, 374[4] (banc 1953).

Trade regulation acts generally do not make it mandatory for the court to issue an

injunction in every instance where it finds that a defendant in a proceeding brought thereunder has committed a violation. The issuance of an injunction in such cases is a matter of discretion. *State ex rel. Johnson v. International Harvester Co.,* 25 Or.App. 9, 548 P.2d 176 (1976), citing *Hecht Co. v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). In this connection see also *United States v. U. S. Steel Corp.,* 251 U.S. 417, 445, 40 S.Ct. 293, 64 L.Ed. 343 (1920); *Industrial Ass'n of San Francisco v. United States,* 268 U.S. 64, 45 S.Ct. 403, 69 L.Ed. 849 (1925); *Fram Corporation v. Boyd,* 230 F.2d 931[1] (5th Cir. 1956); *Parkway Baking Company v. Freihofer Baking Company,* 255 F.2d 641, 649[18] (3rd Cir. 1958); *Coca-Cola Co. v. Howard Johnson Co.,* 386 F.Supp. 330, 338–339[19] (N.D.Ga.1974); *John Wright, Inc. v. Casper Corp.,* 419 F.Supp. 292, 326, fn. 20[58] (E.D.Pa.1976). In *Parkway Baking Company,* supra, 255 F.2d l.c. 649, the court expressed the rule thusly: "The cases are legion which say that where there has been a cessation of the conduct complained of, at any time prior to judgment, it is a matter for the exercise of the discretion of the court, as to whether an injunction should issue. Under the facts of this case we do not believe that the court below abused its discretion."

■ Although Harris flatly denied the charge, there was an evidentiary basis for the court's findings that Harris made misrepresentations to two purchasers that Partridge Drive would be a dead-end street and broke promises he made to the Wibbenmeyers and Harpers. Assuming the correctness of the court's findings in these respects it was nevertheless within the proper exercise of the court's discretion not to issue an injunction against defendant Harris personally, in view of the fact that he had ceased and desisted from engaging in the construction business, and presented no prospect of re-entering the field.

The uncontradicted facts and circumstances surrounding the parties at the time of the hearing of this case show that in the spring of 1974 the cash flow stopped. No more money was coming in. Outgo exceed-

ed income. The work came to a halt. In May or June of 1974 the major creditors foreclosed first mortgages on the property located in the several subdivisions, thus depriving the corporation of all interest in the lands and unfinished houses. After foreclosure defendant Harris had no further control over the business; defendants ceased functioning as developers of subdivisions and went completely out of the business of constructing residences. Defendant Harris "ceased to exist" as president of the corporation. He had loaned the corporation personal funds in excess of a quarter of a million dollars and in addition had borrowed money until he was "borrowed out." At time of trial in April, 1975 defendant Harris had lost the construction company, his interest in the several subdivisions, a separate heating and cooling business and was unemployed. There was no evidence, by way of threat, expressed hope or intention, or otherwise, to indicate any probability or even possibility that defendant Harris would resume operation in the field of subdivision development or home building.

"The purpose of an injunction is not to afford a remedy for acts that have been consummated, but only to prevent future mischief. Consequently, it is well recognized that rights already lost, and wrongs already perpetrated, cannot be corrected in such manner. [Citing cases.] Such being true, and there having been no showing that defendant Lamb Construction Company was threatening or intending to repeat the injury, it follows that no basis was established for relief by injunction against it." *Lademan v. Lamb Const. Co.,* 297 S.W. 184, 185–186[2] (Mo.App.1927).

"A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued in the absence of any evidence that the acts are likely to be repeated in the future." 43 C.J.S. Injunctions § 22 d., p. 445. And see 42 Am.Jur.2d Injunctions § 5, p. 731.

In determining whether the court abused its discretion in declining to enjoin defendant Harris there are facts and circumstances supportive of the court's action in addi-

tion to the fact that Harris quit the subdivision and building business and is not likely to re-enter that field in the future. These relate to prolonged, almost unprecedented heavy rainfall and unusually adverse weather conditions which delayed operations; the sensitivity of Harris to the dissatisfaction of and complaints made by the purchasers of homes; Harris' considerable efforts, personally and through his staff, to please the purchasers, relieve hardship cases, rectify errors and mistakes in construction, meet his obligations on target dates in completing houses and installing streets, grading lots and seeding lawns, replacing improperly installed concrete, repairing cracked foundations, supporting a sagging roof, rehanging and replacing improperly installed doors, etc.; the hiring of professional advice to evaluate various problems encountered, and devoting a quarter of a million dollars or more of personal funds to keep the operation going. The court's findings of fact took account of several of these demonstrations of good faith on Harris' part.

There was no basis for injunctive relief against defendant Harris. The court exercised a wise discretion in refusing to enjoin the individual defendant.

Judgment affirmed.

SIMEONE, C. J., and ALDEN A. STOCKARD, Special Judge, concur.