**MAY DEPARTMENT STORES COMPA-NY et al., Plaintiffs–Respondents,**

v.

**COUNTY OF ST. LOUIS, Missouri et al., Defendants–Appellants.**

**No. 40017.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 5, 1980.

Bryan, Cave, McPheeters & McRoberts, Michael G. Biggers, Thomas C. Walsh, R. H. McRoberts, St. Louis, Albert Michenfelder, Jr., Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for plaintiffs–respondents.

Thomas W. Wehrle, County Counselor, James H. White, Assoc. County Counselor, Clayton, defendants–appellants.

KELLY, Chief Judge.

The appellants, the County of St. Louis, the St. Louis County Council and its members at the time, Donald L. Bond, Carl W. Breihan, James R. Butler, Brainerd W. La-Tourette, Jr., Maurice L. Stewart, Elizabeth Van Uum, and Harry Van Romer and Robert J. Hagel, Director of Public Works of St. Louis County, appeal from a judgment of the St. Louis County Circuit Court in an action for declaratory judgment and injunction instituted by the respondents, The May Department Stores Company, Woodcrest Development Company, Inc., and Linclay Corporation.[1]

Reduced to its simplest issues, this case is concerned with the legality of the construction of a Venture Store on some real estate consisting of thirty–three acres of land, five acres of which are within the city limits of the City of Creve Coeur, and the remaining twenty–eight acres of which are located within the unincorporated area of St. Louis County in the vicinity of Highway I–270 and Olive Street Road. Because there are critical factual issues which play a decisive role in the result we reach with respect to several Points Relied On presented by appellants, we would take cognizance, at this point, that the review of this case is governed by the principles announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), and we are required to uphold the judgment in this court–tried case unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

The trial court filed eighty–three (83) Findings of Fact, which we conclude were supported by substantial evidence. The evidence supporting these findings, and germane to our decision, was that plaintiff, Linclay Corporation, (hereinafter Linclay) was a developer and builder of commercial and office property in St. Louis County; that in particular, Linclay had developed the Bellerive Executive Park in west St. Louis County; and the success of this combined office and commercial project from Linclay's standpoint led Linclay to look for other west St. Louis County property in order to develop a similar project. During the summer of 1975–1976, Linclay became interested in certain property located in the unincorporated areas of St. Louis County at the northwest corner of the intersection of Olive Street Road and I–270. This property, together with certain adjoining property, located within the City of Creve Coeur was later identified as Woodcrest. In view of the location and the other commercial and institutional occupants along Olive Street Road near Woodcrest, the Woodcrest site was most suitable for development for commercial purposes but the Woodcrest property was zoned residential and Linclay needed rezoning for commercial and office development of said Woodcrest. In connection with its efforts to have the property rezoned for commercial usage Linclay emphasized and requested a need for the developer to have more flexibility than was permitted in the development of Bellerive. Officials in the St. Louis County Planning Department agreed with this need for flexibility. In a hearing before the St. Louis County Planning Commission on Linclay's rezoning request, held on July 12, 1976,

---

1. Although some of the named defendants are no longer members of the St. Louis County Council, no substitution of parties has been made.

Linclay compared its proposed Woodcrest project to the Bellerive development, emphasizing that its promotional materials were purely schematic and stressing that its request provided maximum flexibility for the developer. Linclay made no representations about "discount stores" at this hearing and did not commit itself on any of the details of the development. At a similar hearing before the Creve Coeur Planning Commission in June of 1976, Linclay, upon questioning, stated that it could not rule out the possibility of a "discount store" at Woodcrest.

Linclay contacted numerous office, commercial and hotel businesses as potential tenants for the proposed Woodcrest development. One of these contacts was with plaintiff, the May Department Stores Company (hereinafter May). Between the months of May, 1976, and September of 1976, Linclay and May negotiated for the possible lease of commercial space at Woodcrest for a retail store of May's Venture division. Venture is the second largest retailer in annual sales volume in the St. Louis area, trailing only the Famous–Barr stores, also owned by May. Venture's twenty–four stores, ten of which are in the St. Louis area, are characterized by the use of self–service check–out features, a broad variety of merchandise, encouragement of family and recreational shopping, and the promotion of a "good value" image. These Venture stores attract basically the same class of customers as the Famous–Barr stores, aiming at all customers except those in the very high and the very low income brackets. There is a substantial overlap in merchandise except for the very top of the line items, and the merchandise is in general offered at slightly lower prices at a Venture store. Venture stores are different in that they carry a minimum of designer clothing and furniture or heavy appliances, have more self–service, do not have their own credit service, and are somewhat less expensive in their interior decor.

During negotiations over a Venture lease at Woodcrest, Linclay made several demands designed to insure the quality of the Woodcrest development, and May consented to them. Linclay required a different, more expensive exterior design and construction than any other Venture store by requiring brick on exterior walls, a non–rectangular building, a different roof treatment, exterior landscaping, deletion of the traditional Venture canopy, and restrictions on signs.

Linclay completely and totally terminated negotiations with May on September 25, 1976. Negotiations were terminated because Maurice Stewart, a member of the St. Louis County Council, had indicated to Linclay a few days preceding termination of Linclay's negotiations with May that a Venture store was unacceptable to him as an occupant of that location. No agreement had been reached by Linclay and May on most of the specific terms of the possible lease and in particular, no agreement had been reached on the amount of space to be leased or on the amount of rent to be paid. Councilman Stewart's opposition to Venture stores, and to "discount" stores in general in west St. Louis County had been previously demonstrated in 1973, when, upon learning that Venture might locate a store in a development by Shell Oil Company at the corner of U. S. Highway 40 and Highway 141, Stewart introduced and secured passage of an ordinance repealing the C–8 Planned Commercial District zoning for that property. Litigation by Shell followed, and upon its settlement, Stewart sponsored Ordinance No. 7409, which explicitly prohibited the use of that property for "discount" stores.

Councilman Stewart was also instrumental in the insertion of language in Ordinance No. 7513 prohibiting "discount" stores in Bellerive Executive Park in west St. Louis County to insure that there would be no such stores there. Language barring "discount" stores was inserted in that Ordinance after Councilman Stewart learned of negotiations between the developer, Linclay, and K–Mart, which was identified as a so–called "discount store." Councilman Stewart also introduced Ordinance No. 7999, adopted two weeks after the Woodcrest rezoning, specifically prohibiting a

"discount" store in another west St. Louis County development. There are no such prohibitions against "discount" stores in any ordinances relating to developments in north St. Louis County or south St. Louis County.

Councilman Stewart admitted that he is opposed to the location of any Venture store or any other store which he regards as a "discount" store in the area of west St. Louis County, west of Lindbergh Boulevard and bounded by Clayton Road on the south and Olive Street Road on the north, which area is substantially in his Council District.

On or about September 17, 1976, Dale Perkinson, President of Linclay, met with Councilman Stewart at his office and presented him with a letter from Mr. Henry A. Lay, May's Executive Vice–President, describing the proposed Venture store. Councilman Stewart refused to read or keep a copy of the letter, again expressing his opposition to any discount store at this location.

Following Linclay's termination of negotiations on September 25, 1976, Mr. Lay and Linclay had absolutely no contact with respect to Woodcrest again until October 28, 1976. After Linclay terminated its negotiations with May, several officers of Linclay formed a partnership known as Woodcrest Associates, to develop a commercial building on Woodcrest. Architectural plans for this building were developed in late September and October, 1976, and labeled first "Woodcrest Walk" and later, "Woodcrest Plaza" by the architect, Robert Boland. This building, as proposed, would have been located in part on what is now identified as Lot 4 of Woodcrest and would have occupied some of the same property as that occupied by the building presently being constructed at that site. Linclay expended time and effort in specific lease negotiations with several prospective tenants for this building. May had no representative at any hearings or meetings of the County Council (hereinafter Council) or Planning Commission dealing with the Woodcrest rezoning petition. No statements or representations to either of those bodies were made by May or any one acting in its behalf in connection with Linclay's efforts to acquire the rezoning of Woodcrest.

On September 30, 1976, the Council held a public hearing on Linclay's rezoning request. At this time Linclay and May had terminated all dealings. In its presentation Linclay repeatedly compared the proposed development to that at Bellerive; at this hearing Councilman Stewart inquired whether Linclay was "contemplating" any "discount houses." Linclay, through its attorney, responded by indicating that the economics of the Woodcrest development placed it beyond the practical reach of "discount" stores and that Linclay's policy was that there would be none. These responses the court found were true and correct at the time they were made and were not made with the intent to deceive any one; Linclay's attorney did not deceive or mislead anyone. May did not learn of Linclay's attorney's statements on this occasion until sometime in July of 1977.

On October 21, 1976, the Council passed Substitute Bill No. 1 for Bill No. 252, 1976. After being sent to and signed by the County Supervisor, this Bill became effective as Ordinance No. 7984. Ordinance No. 7984 rezoned the part of Woodcrest therein described from "R–3" 10,000 Sq.Ft. Residence District to "C–8" Planned Commercial District. Ordinance No. 7984 also approved preliminary plans for development of the property known as Woodcrest. The Council had previously included a specific prohibition against "discount" stores in C–8 zoning ordinances when that was the Council's desire.

At a public hearing on September 30, 1976, Linclay was prepared to agree to insert such a prohibition in Ordinance No. 7984, but the Council made no request to that effect, and the Ordinance as enacted contained no such prohibition. The Council could have inserted such a restriction in the Ordinance but failed to do so.

The Council has also previously included in C–8 zoning ordinances, provisions designed to control and otherwise restrict the ultimate use of rezoned property, e. g. re-

quirements that any single store be limited in size, or that particular uses be located in particular buildings or parts of buildings, and that a "mall" be built. The Planning Commission did not make any such recommendations in connection with Ordinance No. 7984, and no such provision appears in said ordinance. The ordinance allows considerable flexibility in the development of Woodcrest including the use of a major portion, or indeed, all of the available commercial space, for a single tenant. A maximum of 200,000 square feet of building floor area may be used for retail commercial establishments under the ordinance and there is no restriction on the size of any individual establishment contained therein. The Venture store under construction at the time of trial encompassed approximately 114,000 square feet. The ordinance permits the operation of a Venture store at Woodcrest.

The trial court found, as a fact, that at no time did Linclay represent that the entire commercial space available for development would be occupied by small shops or boutiques. It would be unrealistic and economically unfeasible to expect such shops or boutiques to be able to survive without the presence of at least one major commercial user to attract customers. On October 22, 1976, Linclay exercised its option and purchased the property comprising Woodcrest. Title to part of the property was taken by Woodcrest Associates and one lot was taken in the name of Central Missouri Realty Company, pursuant to a preexisting sales contract. Linclay and Woodcrest Associates paid between $2,900,000.00 and $3,000,000.00 for the land they acquired. This purchase was made in good faith reliance on Ordinance No. 7984. Immediately thereafter, Linclay began development of the property including payment of $120,000.00 to the State Highway Department for road improvements. Linclay had also placed $100,000.00 in escrow for sewer improvements conditioned on passage of Ordinance No. 7984. These and other development expenses were incurred in good faith reliance on the ordinance.

On or about October 27, 1976, Linclay learned that citizens in the neighborhood of Woodcrest had determined to challenge and hinder the development of the property through a lawsuit based upon alleged procedural irregularities in the passage of Ordinance No. 7984 and by such litigation to tie up the development of Woodcrest as long as possible. Linclay had previously suffered serious financial losses and problems arising from litigation which interrupted and almost doomed its development at Earth City in St. Louis County. It had only just regained full financial stability and did not wish to face protracted litigation over Woodcrest. Linclay therefore decided, contrary to its normal method of operation, to try to sell Woodcrest in its undeveloped state and thereby avoid litigation. It would not have considered selling the land in the absence of the threatened litigation and would have earned substantially more money by developing the property itself rather than selling it. Had it not been faced with this threat of the citizens' committee to institute litigation to delay development of the area, Linclay would not have sold the property to May and no Venture store would have been built.

On October 28, 1976, Linclay contacted May and, for the first time, offered to sell the Woodcrest property, demanding a prompt transaction, adherence to the quality standards previously imposed by Linclay, and, as a condition of any sale, that May take the property subject to any litigation.

On November 18, 1976, the Council adopted Resolution 2662, which was recommended by the St. Louis County Planning Department in response to a letter from Linclay. This Resolution had the effect of amending the legal description of the property in question by deleting certain property from Ordinance No. 7984 and amending two of the conditions set forth therein. The Resolution was routine, did not affect any substantive rights and was characterized as "ministerial" by the St. Louis County Director of Planning. That portion of the Resolution which changed the approving authority for the Final Development Concept Plan from the Council to the Planning

Commission was requested by the Planning Department in order to correct a typographical error in Ordinance No. 7984.

On November 19, 1976, Linclay conveyed all of the Woodcrest property, except the parcel previously sold to Central Missouri Realty Company to plaintiff, Woodcrest Development Incorporated, which was incorporated by May in early November. While the broad outlines of this transaction had been agreed upon on November 2, 1976, the specifics were not finalized until just prior to the closing and after intensive effort by the parties to reach an agreement.

May paid approximately $3,200,000.00 for the land and a sum in excess of $525,000.00 to reimburse Linclay for the expenses it had previously incurred in the development of and the improvements to the Woodcrest property, including $100,000.00 for the sewer escrow payment and $120,000.00 for highway improvement payment referred to hereinabove.

Woodcrest Development, Inc., a wholly owned subsidiary of May, was formed for the specific purpose of developing Woodcrest. May frequently uses subsidiaries in its real estate transactions for a variety of legal, financial and accounting reasons and to avoid premature disclosure of its plans to competitors. Although naked legal title to Woodcrest Development, Inc.'s stock was placed in Linclay in February of 1977 for the purpose of avoiding real–party–in–interest problems in connection with other litigation, May has at all times retained effective control of Woodcrest Development, Inc.

In purchasing Woodcrest, May was familiar with other St. Louis County zoning ordinances specifically prohibiting "discount" stores and with the absence of such language from Ordinance No. 7984. It relied in good faith on the language of the Ordinance permitting operation of a combined commercial and office development, including a Venture store, on the property. It would not have purchased the property had it been zoned residential. The purchase price paid by May, and previously by Linclay, reflected a premium for the commercial zoning of the property purchased. The property would be worth only $340,000.00 to $510,000.00 for residential use.

Following the sale, Linclay retained an interest in one parcel of Woodcrest and subsequently acquired an interest in one other parcel by assuming an outstanding sales contract. It also became marketing and developing agent for the entire project.

On November 19, 1976, a Final Development Concept Plan for Woodcrest, previously approved by the Planning Commission, was recorded in the office of the Recorder of Deeds of St. Louis County. The plan complied with Ordinance No. 7984. In further good faith reliance on the ordinance and the approval of the Final Development Concept Plan, May incurred obligations and made expenditures for engineering and architectural drawings and other services, grading and demolition on the property, construction of roads, sewers and storm sewage lines. Between the date of the purchase and the issuance of a building permit, May incurred development and improvement costs in excess of $273,000.00 and paid out over $226,000.00. Subsequent to the purchase of the property, May, pursuant to the goal of an integrated development with mixed office and commercial uses at Woodcrest, sold one lot at Woodcrest to Ira Berry, Realtors for an office building. This building was under construction by June 30, 1977. Negotiations for other office, restaurant and hotel sites were still in process at the time of trial but had been hampered by the existing litigation.

On January 7, 1977, Woodcrest's neighbors instituted Cause No. 390,171 in the St. Louis County Circuit Court whereby they challenged the procedure followed by the Council in reconsidering the rezoning proposal which ultimately became Ordinance No. 7984. The same defendants named in this cause, with the exception of Robert J. Hagel, the Director of Public Works, were named as defendants in that cause of action. Linclay was also joined as a co–defendant. All of the named defendants in said cause fully participated in a joint de-

fense of the validity of Ordinance No. 7984 and defended it against the claimed deficiencies asserted by the plaintiff in that lawsuit. A summary judgment for all defendants was entered in the circuit court in said cause.[2] Throughout the pendency of that action the defendants continually characterized Ordinance No. 7984 as a "legislative" act.

On January 10, 1977, the Planning Commission approved a partial Final Development Plan for Lot 4 of Woodcrest which Plan was thereafter recorded in Plat Book 172 at Pages 50 and 51 on March 30, 1977 of the Office of the Recorder of Deeds for St. Louis County. The Final Development Concept Plan and the Partial Final Development Plan were not and are not the type of plans typically approved by the Council. Ordinance No. 7984 specifically delegates the task of approving said plans to the Planning Commission. This Partial Final Development Plan conformed to the Final Development Concept Plan and complies with Ordinance No. 7984 because it depicts the size and location of the structure to be built on Lot 4. The plan was not required to show the names or numbers of occupants or the details of the interior design of the building. The dotted lines showing "possible mall entrances" and "possible mall layout" were not a commitment to build a mall, for architects frequently use dotted lines to preserve flexibility on plans. There was no evidence that the dotted lines were designed to mislead anyone or that anyone had a right to rely on any dotted lines marked "possible" as representing that such would be built. In fact, at the time of the preparation of the Partial Final Development Plan, May was considering the possibility of multiple tenant occupancy of the Venture store at Woodcrest. A multiple tenant occupancy is still a possibility. In any event, references to the interior of the building on a Partial Final Development Plan is designed only for the purpose of identifying the size and location of the structure.

The initial Partial Final Development Plan originally submitted to the County showed a tower in dotted lines in the northwest corner of the proposed building for possible future construction. This tower was deleted from the Partial Final Development Plan as approved at the request of St. Louis County officials. The tower could still be built with certain modifications to the Venture store building.

The Venture store being built at Woodcrest complies with Ordinance No. 7984 and the plans approved by the Planning Commission, whether it is occupied by one or more than one commercial tenant. Language on the Partial Final Development Plan referring to the amending or vacating of plans by the Council is standard from language supplied by the County and required for approval of plans but does not serve as a basis for the action taken by the Council in this case. In January, 1977, in conformity with standard, routine practice for any large building, the plaintiffs appeared before the St. Louis County Board of Building Appeals and obtained a variance to build an unlimited area building. The number or names of the occupants and the interior configuration of the structure are not material to the criteria and consideration of this request. The plaintiffs' representative advised the Board at that time that the building might not be a mall and that it could be occupied by as few as one user. On March 24, 1977, the Council approved the subdivision plat for Woodcrest, which plat was thereafter recorded in Plat Book 172, at Pages 44 and 45 of the records at the Recorder of Deeds office in St. Louis County. On that same date the Council approved an escrow agreement under which the sum of $272,628.60 was provided by Woodcrest Development, Inc., as a guarantee of the completion of certain site improvements for Woodcrest. These site improvements were to be completed in accord-

2. The neighbors of Woodcrest formed a not for profit corporation to institute this lawsuit for a declaratory judgment. The action of the St. Louis County Circuit Court in sustaining the

motion of the defendants in Cause No. 390,171, was affirmed. *Citizens Against Re zoning, Inc. v. St. Louis County, et al.*, 563 S.W.2d 172 (Mo.App.1978).

ance with the improvement plans referred to in the Escrow Agreement and approved by the Planning Commission prior to March 24, 1977.

On April 6, 1977, the plaintiffs obtained a shell building permit No. 170-0063-77, for the construction of the shell of a commercial building on Lot 4 of Woodcrest. The name of the potential occupant of the building is not necessary to the processing of this application, and shell permits are routinely issued without identification of the occupant. In issuing the shell building permit, the County is not concerned with the use of the building.

In further good faith reliance on Ordinance No. 7984 and the shell building permit, plaintiffs, having previously cleared and graded the Woodcrest property, began to build a commercial building on Lot 4 thereof. By July 14, 1977, the foundation of this building had been laid, the steel was fully fabricated and partially erected, and a portion of the exterior masonry walls had been erected. Between the week the building permit was issued and the week ending June 23, May continued to develop and improve the Woodcrest property and incurred additional obligations in excess of $1,784,-000.00. It had actually paid out over $173,-000.00. Between June 25 and July 16, May incurred still other obligations exceeding $120,000.00 and paid out over $263,000.00. After July 16, May paid out over $393,-000.00 pursuant to obligations it had incurred before that date.

Architects began the design plans for the interior of the Venture store in Woodcrest in late March or early April of 1977. Application for an interior permit based upon these plans was submitted to the County, and an interior permit was issued prior to trial when the application was in order. The Planning Department is not involved with the review of these plans or the issuance of this permit.

The existence of a Venture store at Woodcrest was first publicly announced by May in a press release in late June of 1977. May generally prefers to delay announcements about new Venture stores until just prior to the "Grand Opening," which is frequently after the store is actually ready for operation or even already put into operation.

Prior to this announcement the plaintiffs never voluntarily disclosed the interest of May in Woodcrest or its intention to place a Venture store there, but they did not conceal these facts from any one to whom they had a duty to disclose them. It was the policy of the representatives of May to tell the truth with reference to a Venture Store if inquiry was made about it. In this case no such inquiry was ever made. Before the public announcement, Linclay informed Councilman Stewart that a Venture store was going to be located at Woodcrest. Upon being so advised, Councilman Stewart called the County Counselor's office and ordered that an ordinance be drafted repealing Ordinance No. 7984. Up to that time he had never seen the building under construction at Woodcrest and had no idea what plaintiffs' marketing plans were for the rest of the Woodcrest development. Without prior notification to any of the plaintiffs, he introduced Bill No. 239, the text of which read:

"Ordinance No. 7984 is hereby repealed"

Prior to July 1, 1977, no official of St. Louis County had suggested to plaintiffs that the Venture store deviated from or violated any ordinance, the previously approved plans, or the building permit. On or about July 6, 1977, May sent a letter to all members of the Council describing the Venture store being built at Woodcrest and the ways in which it differed from other Venture stores in the St. Louis area.

On July 7, 1977, Councilperson Van Uum introduced Bill No. 244, which Bill was identical to Bill No. 239, except for the name of the sponsor. Bill No. 244 was finally passed on August 11, 1977, and upon being duly endorsed by the County Supervisor, became Ordinance No. 8330. No "Resolution of Intention" was initiated in connection with the enactment of Ordinance No. 8330. No hearing was held with regard to the Bill which became Ordinance No. 8330. On July 14, 1977, the Council adopted Reso-

lution No. 2723, and on July 15, 1977, Robert J. Hagel, Director of Public Works, acting through one of his inspectors, served the plaintiffs with a stop–work order issued pursuant to Resolution No. 2723. This order had the effect of substantially halting construction of the commercial building and other improvements at Woodcrest. It was not based on any finding by the Director of Public Works pursuant to St. Louis County Revised Ordinance 1101.175. The Council was on vacation from July 14 until August 11, 1977. Any "review" authorized by Resolution No. 2723 could not have taken place during that period of time, despite the fact the project would have been shut down.

The trial court found that Resolution No. 2723 and Ordinance No. 8330 were passed without any meaningful consideration of the actual development of Woodcrest. The proposed interior design of the Venture store to be constructed at Woodcrest is unlike any other Venture store in the St. Louis area; rather, it is similar to that of two new "Prototype VI" Venture stores in the Chicago area. This design eliminates the gas station and the automotive accessories departments and places greater emphasis on men's clothing and sporting goods. It employs more elaborate displays for cosmetics and jewelry, more wall paper, more expensive lighting, and much more carpeting in the sales areas than in any Venture stores currently operating in the St. Louis area. It is architecturally superior in both exterior and proposed interior design to other stores currently operating in Bellerive where "discount" stores are prohibited by the terms of the governing ordinance. The interior design for the Venture store at Woodcrest uses more expensive and esthetically desirable ceiling and lighting fixtures and more carpeting in the sales areas. The exterior of the store uses higher quality materials and has a non–rectangular shape, rather than a simple "box." The other stores in Bellerive carry a broad variety of merchandise and emphasize self–service as does Venture, and they are generally price competitive with Venture stores. It also provides parking which complies with Ordinance No. 7984. It complies with the St.

Louis County Building Code and conforms to the statements about "quality" made by Linclay prior to the rezoning. The actions of the defendants predicated upon the assumption that the Venture store to be constructed at Woodcrest was not of the "quality" required by Ordinance No. 7984 are completely unsupported by the facts, and the Venture store building is also extremely similar to the one store building shown in the original rendering of the proposed project. There was no change between the shell building depicted on the Partial Final Development Plan and the shell building being constructed. The Venture store at Woodcrest will have a primary trade area confined to west St. Louis County and the demographics and life–style of the area will dictate the kind of merchandise to be sold at said store. There is a substantial amount of developable land remaining at Woodcrest, including some area within the loop road. Efforts to market other parcels in Woodcrest are for office, hotel or commercial use as part of a single multi–use project and have continued up to the present time. It is in the interest of May to attract quality tenants to the project to help justify the initial purchase price of the property. The presence of a Venture or other large, free standing, single tenant store does not impede efforts to attract offices or a hotel to the development. There is substantial office use at Bellerive where there are several large retail stores and where a "discount" store was a significant part of the development at its inception. May and Linclay were currently negotiating for Linclay to develop an office building or hotel adjacent on one side and a commercial restaurant complex on another side of the Venture store at Woodcrest. As of July 20, 1977, the date of the issuance of the temporary restraining order against appellants, May had invested more than $5,900,000.00 in purchase and development of the Woodcrest property; this investment requires an annual carrying cost to May of $590,000.00, or an amount somewhat in excess of $1600.00 per day.

Ordinance No. 8330 and Resolution No. 2723 caused injury to the plaintiffs by preventing and inhibiting the orderly and complete development of their land while carrying costs continued to accrue. There is no evidence whatsoever that a conspiracy existed between Linclay and May to obtain the rezoning of Woodcrest, nor is there any evidence that Linclay was acting for May, or on its behalf, in obtaining the rezoning.

The County Counselor's Office had previously furnished the Council with a legal opinion that where the rights of third persons had intervened and where vested rights would be impaired, the Council could not, thereafter, reconsider its action.

The trial court entered judgment (1) declaring Ordinance No. 8330 invalid, ineffective, null and void and unconstitutional as applied to Woodcrest, including the operation of a Venture store there; (2) declaring Resolution No. 2723 invalid, ineffective, null and void, and unconstitutional as applied to Woodcrest, including the operation of a Venture store there; (3) declaring the stop work order of July 15, 1977, issued pursuant to Resolution No. 2723 invalid, ineffective, null and void; (4) declaring Ordinance No. 7984 valid and effective as the current zoning of Woodcrest; (5) declaring that Ordinance No. 7984 cannot be repealed, revoked, vacated, amended or otherwise altered or nullified by the appellants so as to prevent or inhibit respondents development of Woodcrest for commercial, office and/or hotel uses, including the operation of a Venture store; (6) declaring that all Woodcrest plans previously approved and all building permits for Woodcrest previously issued are valid and effective and have the same force and effect they did before the adoption of Resolution No. 2723; (7) declaring the previous approvals of Woodcrest plans and the previously issued building permits for Woodcrest cannot be revoked, vacated, amended, or otherwise altered or nullified by appellants so as to prevent or inhibit the construction and use of the buildings or structures depicted on the plans or covered by the permits; (8) estopping respondents from enforcing Ordinance No. 8330, Resolution No. 2723, and the July 15, 1977, stop-work order; (9) estopping appellants from repealing, revoking, vacating, amending, or otherwise altering or nullifying the C-8 zoning of Woodcrest, the previously approved Woodcrest plans, and the previously issued building permits for Woodcrest so as to prevent, or inhibit respondents development of Woodcrest for commercial, office and/or hotel uses including the operation of a Venture store thereon, or to prevent or inhibit the construction and use of the building or structures depicted on the plans or covered by the permits; (10) declaring that the appellants have no right to halt, delay, or interfere in any way with respondents' construction at, and development, use and occupancy for commercial, office and/or hotel uses of Woodcrest, including the construction and operation of a Venture store there, on the basis of previous statements, omissions or representations made by respondents or on the basis of inadequacies or defects in any Woodcrest plans, previously approved and any building permits for Woodcrest previously issued.

The judgment also permanently enjoined the appellants (1) from enforcing Ordinance No. 8330, Resolution No. 2723, and the July 15, 1977, stop-work order; (2) from repealing, revoking, amending or otherwise altering and nullifying the C-8 zoning of Woodcrest, the previously approved Woodcrest plans, and the previously issued building permits for Woodcrest so as to prevent or hinder respondent's development of Woodcrest for commercial, office and/or hotel uses, including the operation of a Venture store there, or to prevent or hinder the construction and use of the buildings or structures depicted on the plans or covered by the permits; (3) from halting, delaying or interfering in any way with respondents' construction at and development, use and occupancy for commercial, office and/or hotel uses of Woodcrest, including the construction and operation of a Venture store there, on the basis of previous statements, omissions or representations made by respondents or on the basis of inadequacies or defects in any Woodcrest plans previously approved and any building permits for Wood-

crest previously issued; and (4) from failing to process or refusing to approve any additional plans, or refusing to issue any additional permits or licenses for respondents' construction at and development, use and occupancy for commercial, office and/or hotel uses of Woodcrest, including the construction and operation of a Venture store there, provided the normal and usual conditions of such processing, approval or issuance have been met.

■ On appeal the appellants contend that the trial court erred: (1) in granting injunctive relief against them because respondents are authorized thereby to develop Woodcrest in a manner inconsistent with respondents' representation to County officials that there would be no "discount" store constructed at Woodcrest, a misrepresentation which was material to their request for rezoning and which was relied upon by the Council in enacting Ordinance No. 7984 rezoning the Woodcrest property from residential to planned commercial, C–8; (2) in declaring Ordinance No. 8330 invalid; (3) in entering a vague and overbroad permanent injunction which is ultra vires in that it attempts to enjoin the Council from future legislative action; it attempts to enjoin any manner of future interference with respondent's use and development of the property, when neither the threat nor the likelihood of such future acts was pleaded or proved by the respondents.[3]

Respondents, in their brief, contend that the trial court's judgment should be affirmed because it is supported by an independent ground which has not been challenged by the appellants in their brief and has therefore been abandoned. This independent ground respondents rely on for this argument is the holding of the trial court that even if the appellants had complied with the applicable procedural requirements for the enactment of Ordinance No. 8330

and the adoption of Resolution No. 2723, nevertheless, the Ordinance and the Resolution violated the due process and equal protection clauses of the Constitution of the United States and the State of Missouri.

Appellants filed no reply brief answering this contention of respondents.

The respondents, in support of this argument, rely upon three conclusions of law reached by the trial court in support of its judgment and decree. In each of these the trial court found respondents' constitutional rights were violated even if the appellants had complied with the ordinance and procedural prerequisites governing the repeal of Ordinance No. 7984 and the directive to the Director of Public Works to issue the stop work order. In Conclusion of Law No. 13 the trial court held respondents' due process rights were violated by passage of Ordinance No. 8330 repealing Ordinance No. 7984 and adoption of Resolution No. 2723 revoking all previously approved plans for Woodcrest. In Conclusion of Law No. 14 the trial court held that this same course of conduct by the Council constituted a violation of respondents' due process and equal protection rights because such actions were retroactive and discriminatory, their sole objective being to prevent a particular occupant, Venture, or class of occupants, "discount" stores, from making lawful use of Woodcrest. In Conclusion of Law No. 15, the trial court held that appellants' actions in enacting the Ordinance No. 8330 and adopting Resolution 2723 violated the due process clauses of the federal and state constitutions because they were confiscatory actions depriving respondents of the use and value of their property at Woodcrest and depriving them of their vested rights in the development of Woodcrest.

The thrust of respondents' argument is that where a judgment is based on several grounds, on appeal, the party aggrieved by

---

**3.** Appellants' third Point Relied On "The trial court erred in granting judgment for plaintiffs to authorize them to construct a single tenant store where the development plan whose approval was a mandatory prerequisite to issuance of building permit identified the proposed site as 'Woodcrest Mall' and indicated

that it would be a mall-type structure." does not comply with Rule 84.04(d) in that it is conclusory and fails to specify what it was that mandated approval of the Development Plan as a prerequisite to the issuance of a building permit.

the judgment must assign error as to each ground upon which the judgment is based or risk having the judgment affirmed on the ground to which no error was assigned, because appellant has waived his right to complain of the ruling to which no error was assigned.

Respondents candidly admit they have found no Missouri authority for this proposition. They do, however, cite two decisions of the Texas Civil Appeals Court and one from the Supreme Court of Iowa applying this principle. *Jones v. Austin Co.*, 531 S.W.2d 377, 380[1] (Tex.Civ.App.1975); *Nesmith v. Hester*, 522 S.W.2d 605, 606[2] (Tex. Civ.App.1975); *Keefe v. Price*, 262 N.W. 309, 312[7] (Ia.1938).

■ We believe that this principle is consistent with the rule followed by this court in a number of cases that a judgment of a trial court must be affirmed if it is sustainable on any theory set forth in the pleadings or supported by the evidence. *Campbell v. City of Frontenac*, 527 S.W.2d 643, 644[1, 2] (Mo.App.1975); *Hall v. Hall*, 506 S.W.2d 42, 44[2] (Mo.App.1974); *Nelle Plumbing Company v. Stefanic*, 453 S.W.2d 636, 639[2] (Mo.App.1970).

■ Initially, we conclude that the trial court's finding that Ordinance 7984 was valid and not the product of fraud perpetrated upon the Council by Linclay's counsel was supported by the evidence, and that any statements of Linclay's counsel to the Council were irrelevant and immaterial to the validity of the ordinance. *Strandberg v. Kansas City*, 415 S.W.2d 737, 742[4] (Mo. banc 1967); *State ex rel. Stewart v. King*, 562 S.W.2d 704, 707[2] (Mo.App.1978).

■ May, as a third party, purchased the subject property subsequent to the enactment of Ordinance No. 7984 and had the

right to rely on the zoning of the property at the time of purchase and to be free from any arbitrary rezoning affecting its use of the property. The evidence clearly demonstrates that Ordinance No. 8330 was enacted solely to prevent the operation of a Venture store on the property and not because the Council made a determination that the public good required rezoning of the property so that it reverted to residential zoning when its best use was commercial. The retroactive application of a rezoning amendment aimed solely at an individual site already in the process of being developed has been consistently denounced as discriminatory, arbitrary, unreasonable and confiscatory. *Commercial Properties, Inc. v. Peternel*, 418 Pa. 304, 211 A.2d 514, 518–519[6] (1965); *Sunset View Cemetery Ass'n. v. Kraintz*, 196 Cal.App.2d 115, 16 Cal.Rptr. 317, 322–323[6] (Cal.App.1961).

Furthermore, May had already invested approximately $5,800,000.00 in the purchase of the land, site preparation, grading, excavation, roadway improvements, sewer and utility installations and building construction after obtaining approval of its plans and the issuance of grading and building permits, thereby acquiring vested rights in Woodcrest, all in reliance on the C–8 Zoning authorized by Ordinance No. 7984. A good part of the construction of the building which would, upon completion, house the Venture store had proceeded by the time the Council hastily enacted the Ordinance repealing the C–8 Zoning. To permit this action of the Council to stand under the circumstances of this case would constitute an unreasonable deprivation of the use of May's property. *Krekeler v. St. Louis County Board of Zoning Adjustment*, 422 S.W.2d 265, 266[6] (Mo.1968).[4]

4. "The rule that construction begun in reliance on existing zoning and on a regularly issued building permit can be completed notwithstanding a subsequent zoning change has been applied in almost every jurisdiction and with respect to virtually every kind of proposed use. E. g., *Pioneer Trust & Savings Bank v. County of Cook*, 71 Ill.2d 510, 17 Ill.Dec. 831, 377 N.E.2d 21 (1978) (retirement complex); *Boise City v. Blaser*, 572 P.2d 892 (Idaho 1976) (con-

dominium project) *Town of Paradise Valley v. Gulf Leisure Corporation*, 557 P.2d 532 (Ariz. App.1976) (resort hotel); *Spalding County v. East Enterprises, Inc.*, 209 S.E.2d 215 (Ga.1974) (mobile home park); *Board of Supervisors v. Medical Structures, Inc.*, 213 Va. 355, 192 S.E.2d 799 (1972) (nursing home); *Clackamas County v. Holmes*, 508 P.2d 190 (Ore.1973) (food processing plant); *Pure Oil Division v. City of Columbia*, 173 S.E.2d 140 (S.Car.1970)

■ These constitutional issues were raised in respondent's pleadings, are supported by the evidence, and unchallenged by appellants in this court. Therefore, we hold that appellants have waived any error, if there be any, in this independent basis for the trial court's judgment.

We will, nevertheless, consider the appellants' contention that the permanent injunction ordered by the trial court is vague and overbroad.

Appellants' attack the injunction as overbroad on the grounds that it violates the fundamental principle that a court may not enjoin a local legislative body from passing an ordinance. They rely on *Albright v. Fisher*, 164 Mo. 56, 64 S.W. 106 (1901) for the proposition that a court may not interfere with a legislative body engaged in the performance of its legislative functions; therefore, they contend, that portion of the injunction which restrains appellants from repealing, revoking, vacating, or otherwise altering or nullifying the provision of Ordinance No. 7984 whereby Woodcrest was rezoned to the C–8 classification must be stricken from the injunctive relief granted respondents.

Appellants argue that since the exercise of zoning authority by the St. Louis County Council is indisputably a legislative act, it is settled law that the Court may not enjoin the exercise of that function. They admit that the portion of the injunction restraining them from enforcing the provision of Ordinance No. 8330, Resolution No. 2723 and the stop–work order of July 15, 1977, are fully responsive to the case brought by the respondents if the Ordinance and Resolution are found invalid. Therefore, since we have affirmed the trial court in its finding that the ordinance, resolution and stop–work order of July 15, 1977, with respect to Woodcrest, unconstitutional, we do not consider further appellants' attack on that portion of the trial court's injunction.

■ As a general rule a court of equity will not enjoin a municipal legislative body

from exercising legislative powers, even though its action may be unconstitutional or ultra vires, and persons aggrieved by such actions are required to obtain relief therefrom by pursuing those remedies available to them after the legislative function has been exercised where these remedies are adequate to prevent substantial injury. *Albright v. Fisher,* supra; *State ex rel. Abel v. Gates,* 190 Mo. 540, 89 S.W. 881, 885[2] (Mo.); 2 LRA (NS) 152 (1905). When injunctive relief is sought to restrain future threatened action, the threatened action must be based upon a real apprehension, and acts for which an injunction is sought must be such as are not only threatened, but will in all probability be committed. *Hudson v. School District of Kansas City,* 578 S.W.2d 301, 312[11] (Mo.App.1979). Unless it can be shown that reasonable grounds exist for apprehending that absent the injunction the actions will be done, the injunction will be denied. *Eckhardt v. Bock,* 159 S.W.2d 395, 398[2] (Mo.App.1942).

■ The issuance of injunctive relief as well as the terms and provisions thereof are, in a proper case, matters resting within the sound discretion of the trial court; said discretion to be exercised in accordance with well–settled equitable principles and in light of all the facts and circumstances in the case. *State ex rel. Danforth v. W. E. Const. Co.,* 552 S.W.2d 72, 73[1] (Mo.App. 1977). The molding of an appropriate injunctive decree rests largely in the sound discretion of the trial court, which is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances, and equities of the case before it. *Coon v. Rupp,* 565 S.W.2d 833, 837[7] (Mo.App.1978).

■ With these general principles in mind, we have examined respondents' petition and do not find any allegations that the Council will, in the future, attempt any rezoning with respect to Woodcrest if Ordinance No. 8330, Resolution 2723, and the

(gasoline station); *Trans-Oceanic Oil Corp. v. City of Santa Barbara,* 85 Cal.App.2d 776, 194 P.2d 148 (Cal.App.1948) (oil well); *Darlington*

*v. Board of Councilmen,* 282 Ky. 778, 140 S.W.2d 392, 396 (1940) (florist shop).

stop–work order of July 15, 1977, are held void; nor have respondents prayed for an injunction restraining future action of that kind. Our examination of the record fails to reveal any evidence that the Council contemplated any such action. For these reasons we hold that the trial court's judgment permanently enjoining appellants from repealing, revoking, amending, or otherwise altering or nullifying the C–8 zoning of Woodcrest contained in paragraphs 5 and 12 of the judgment is ordered stricken therefrom and to have no force or effect. Having held that the trial court's finding that Ordinance No. 8330, Resolution 2723, and the stop–work order of July 15, 1977, violated respondents' constitutional rights we should not, in the absence of evidence to the contrary, conclude that the respondents would not honor the judgment of the trial court and attempt to evade its restrictions in the future.

■ Appellants also challenge those parts of the judgment and decree which (1) prohibit them from revoking, vacating, amending, or otherwise altering or nullifying any previously issued building permits for Woodcrest in Paragraph 12 of the judgment and decree; (2) from halting, delaying, or interfering in any way with the construction, development and use of Woodcrest for commercial, an office and/or hotel, including the construction and operation of a Venture store, on the basis of previous statements, omissions or representations made by the respondents or on the basis of inadequacies or defects in any Woodcrest plans previously approved and any building permits previously approved in Paragraph 13 of the judgment and decree, and (3) from failing to process or refusing to approve any additional plans, or the issuance of any additional permits or licenses for the construction, development, use and occupancy for commercial, office and/or hotel uses, including the construction and operation of a Venture store, provided "the normal and usual conditions of such processing, approval or issuance have been met;" in Paragraph 14 of the judgment and decree.

Appellants argue that these injunctive restraints are beyond the issues presented by the pleadings, relate in major part to potential future legislative acts, are purely speculative, and are overbroad and vague.

Respondents' reply to this argument is that those portions of the judgment and decree are, of necessity, extensive enough to permit respondents to continue the development of Woodcrest without future unreasonable or illegal interference by the appellants. They rely on the principle of law cited in *Coon v. Rupp,* supra, as to the molding of injunctive relief to fit the circumstances of the case, the history of the efforts of the Council to discriminate against Linclay when it applied for rezoning on other occasions, Councilman Stewart's fight to prevent the opening of a Venture store in Kirkwood, as well as the stage of construction the Venture store was in when the permanent injunction issued, and the fact that occupancy permits were then needed by Venture and other plan approvals and building permits would be required for any other construction on the tract.

Nevertheless, we conclude that these restrictions on suspect future action by the appellants to interfere with the Woodcrest tract in accord with the uses permitted for C–8 zoning were at best speculative and overbroad; they infer that the Council will not abide by the decision of the trial court without any evidence in the record that it would not.

Therefore, we affirm the judgment of the trial court insofar as it declares (1) Ordinance No. 7984 valid and effective as the zoning of Woodcrest and (2) that Ordinance No. 8330 and Resolution No. 2723 are invalid, ineffective, null and void and unconstitutional as applied to respondents' development of Woodcrest, including the construction and operation of a Venture store thereon.

Paragraphs 5, 7, 9, 12, 13 and 14, are, for reasons stated hereinabove ordered stricken.

STEPHAN, P. J., and STEWART, J., concur.