Frances S. COOK and Glenn Noble,
Plaintiffs-Appellants,

v.

Julia RUPP, Defendant-Appellant,

Neal D. Fanning, John Doe, Foreman of Gang of Laborers, dredging Mud Lake, Richard Roe, Henry Doe, James Roe, Workmen under aforesaid John Doe, full name of said persons unknown by Plaintiffs,

and

Stanton S. Frakes, Thomas F. Monahan, Lewis Sonnemoser, Gary Pettet and Donald Frakes, constituting the Members of the Board of Supervisors of Halls Levee District, Defendants-Respondents.

No. KCD 29411.

Missouri Court of Appeals,
Kansas City District.

May 1, 1978.

Stanley I. Dale, St. Joseph, for plaintiffs-appellants.

Michael Paul Harris, St. Joseph, for defendant-appellant Julia Rupp.

Before SHANGLER, P. J., WASSERSTROM, J., and MARTIN and CLARK, Special Judges.

WASSERSTROM, Judge.

This is an action for mandatory injunction to require defendant Rupp to take certain remedial action to prevent flooding on the land of plaintiff Cook. The trial court granted part of the relief requested. Defendant Rupp appealed with respect to the relief granted, and plaintiffs appealed as to the relief denied. We affirm.

Rupp and Cook own adjoining land within Halls Levee District, just north of Old Mud Lake. Until the latter part of 1975, most of the Rupp tract was marsh land unsuitable for farming. Some of the eastern portion of the Cook land, lying immediately west of the Rupp land, was also marshy and unusable for agricultural, but much of the Cook land was, in fact, farmed. The Cook land drains generally in an easterly direction over the Rupp land. Also draining onto the Rupp property is water from the north through a natural water course known as Contrary Creek Discharge.

Water coming south in this manner passes under a road at the north boundary of the Rupp property through a 30" tube. All water draining onto the Rupp property, both from the west and from the north, runs south into Old Mud Lake. The water from Old Mud Lake drains into New Mud Lake, and from the latter body it eventually drains into the Missouri River.

In November of 1975, Rupp hired defendant Fanning to dredge mud out of Old Mud Lake and deposit it as fill onto the surface of the Rupp land so as to make the Rupp land suitable for farming. In order to handle drainage, a plan was adopted after consultation with an engineer, Robert Williamson, by which a ditch was dug starting at the outlet of the tube under the north road. This new ditch made a right angle turn from the tube, ran parallel to the north road until it reached the boundary between the Rupp and Cook properties, then made another 90 degree turn and ran south to Old Mud Lake. This ditch was some 8' wide at the bottom, 20' wide at the top and 4' deep.

In addition, Rupp commissioned Fanning to build a low water crossing at the southwest corner of Old Mud Lake where the water ran from that body into New Mud Lake. The purpose of this crossing was to enable farm equipment to pass from Rupp land on one side to other of the Rupp land on the opposite side. Testimony offered by Rupp indicated that this crossing was built to a level of 790' above sea level, which was the same as the normal level of water in Old Mud Lake.

In the winter of 1975–1976, plaintiff Glenn Noble, who farmed the Cook property, noticed an unusual amount of water accumulating on the Cook property, which was verified by Cook's son, Tom Graybill, who managed that property. Believing that the rise of said water was due to the work being done by Fanning for Rupp, Cook and Noble joined in filing the present lawsuit in which they sought to restrain and enjoin further work on the Rupp property and in which they further prayed a mandatory injunction requiring that the Rupp property be restored to its former elevation; that the natural flow of Contrary Creek Discharge be restored; that the low water crossing be removed; that trees, stumps and other debris alleged to have been bulldozed into Old Mud Lake be removed; and that the defendants Board of Supervisors of Halls Levee District be ordered to take whatever action was required in connection with the foregoing.

After the filing of this lawsuit, a conference was held by the lawyers with the circuit judge, as a result of which Rupp instructed Fanning to lower the middle portion of the low water crossing. Fanning did so, the amount of the lowering being stated variously in the testimony at from 3" to 9" below the original elevation. With this exception, the reclamation work on the Rupp property continued, and by the time of trial Fanning had virtually completed all of the project at a cost to Rupp of approximately $188,000.

At the trial, plaintiffs estimated that the rise of water on their property had caused them to lose approximately 36 acres of land which had previously been productive farm land. The implication of this testimony was that this change had been due to the reclamation work on the Rupp land which had resulted in the Rupp property being approximately 3' higher in elevation than the Cook property. However, plaintiffs receded from their initial request that Rupp be required to take off all of the fill from her land and restore it to the former low elevation and marsh condition. As their alternative, defendants substituted a request that Rupp build a new ditch on the eastern side of her property which would constitute a continuation directly south from the tube under the north road to Old Mud Lake; that the east-west portion of the existing ditch along the north boundary be blocked off; and that the north-south ditch along the western boundary of the Rupp tract be maintained in place, but that a water gate be installed at the southern end of that ditch so as to prevent backing up of water into that ditch from Old Mud Lake.

After the taking of extensive testimony and submission of many plats and photo-

graphs, the trial court made findings of fact and issued an injunctive order. The court found that "[p]laintiffs' evidence is insufficient to support their claim that defendants deposited trees, stumps and other debris along the banks of Old Mud Lake, and that plaintiffs were damaged by the low water crossing constructed at the southwest end of Old Mud Lake." Plaintiffs' prayer for relief with respect to those items was therefore denied. The court further found that defendants had improperly obstructed and diverted the flow of Contrary Creek Discharge, and to correct that the court ordered the construction of a new ditch along the east side of the Rupp property and the construction of a barrier in the east-west ditch sufficient to prevent Contrary Creek Discharge from flowing therein.

In her brief in this court, defendant Rupp has abandoned her appeal, and that separate appeal need not be further noticed. On the part of plaintiffs, their Points on Appeal are: (1) that the court failed to grant them full and adequate relief; and (2) that the trial court erred in failing to find that the Rupp private reclamation project was in violation of and barred by the Halls Levee District plan of reclamation.

## I.

### Scope of Relief

Plaintiffs' Point I starts off with a complaint that the court erred in failing to order a complete removal of the entire fill on the Rupp land. However, their own engineering witness Chang testified, "I don't think it is wise to fill this ditch or to push the dirt from this fill area back to the lake." Based upon the position that plaintiffs took at trial, the court stated in its findings of fact: "Plaintiffs recognize that it would be neither reasonable nor practical to order restoration of the Rupp land to its original elevation." That comment is verified by plaintiffs' statement, in their reply brief that "It was Appellants themselves, in the lower Court that suggested to the Court that it would not be reasonable or practical to require Respondents Rupp and Fanning

to remove all of the fill deposited on the Rupp property * * *." In view of those concessions, plaintiffs should not be heard to argue, and indeed they do not seriously argue, that the trial court should have ordered removal of the fill. Instead, the real argument advanced by plaintiffs is that because the fill was not ordered removed, they should have been accorded all of the alternative elements of relief requested by them. The inquiry therefore turns to a consideration of whether the elements of relief requested but which were not granted, were properly denied by the trial court.

The first of these items is the matter of removal of debris allegedly dumped into Old Mud Lake by defendants. The evidence as to whether or not defendants did those alleged acts is conflicting. The trial court after seeing and hearing the witnesses concluded that plaintiffs had not carried their burden of proof on this point. That finding being supported by substantial evidence will not be disturbed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The next item to be considered is the matter of the low water crossing. The normal lake level is 790' and it was that level to which the crossing was originally built. Then, after plaintiffs' complaints, the center part of the crossing was lowered in December, 1975, by from 3" to 9", so that the center portion of the crossing was below lake level and permitted for drainage of water from Old Mud Lake to New Mud Lake. This testimony was corroborated to a degree by plaintiffs' own engineering expert Chang who testified that in August, 1975, he took eight different elevations of the low water crossing and that seven out of the eight were below 790.

Moreover, defendants' engineering expert Williamson testified unequivocally that the low water crossing had no adverse affect upon the Cook property and was not responsible for any water being thereon. The evidence as a whole amply supports the trial court's finding that plaintiffs' proof was insufficient to support their claim that they had been damaged by the low water crossing in question.

The final item of claimed relief for consideration relates to the matter of a water gate at the south end of the western ditch. The only evidence submitted as to the necessity or possible utility of such a gate came from plaintiffs' expert Chang. He did recommend the installation of the gate mentioned for the purpose of preventing the backing up of water from the lake onto the Cook property. However, on cross-examination he conceded that there was no problem of water backing up when the lake was at its normal level of 790'. He further conceded that when there is an abnormal water level in Old Mud Lake, then "you will have flooding whether you have one ditch there or two ditches there" and that "the ditches won't have a thing to do with the flooding." This testimony leaves it far from clear just how much value the gate in question would have to plaintiffs.

Plaintiffs in a case like this who ask for a mandatory injunction carry a very heavy burden of proof. As stated in *Minton v. Steakley*, 466 S.W.2d 441 (Mo.App. 1971), "it must be borne in mind that a mandatory injunction directing the undoing of that which has been done may not be granted on doubtful proof; the mandatory injunction is a harsh remedy, to be granted only when the right thereto is clearly established, the burden of proof being upon the complainant. * * * The issuance of any injunctive process is a matter resting in the sound discretion of the court." Moreover, the molding of an appropriate injunctive decree rests largely in the sound discretion of the trial court. As stated in 43A C.J.S. Injunctions Sec. 235, page 512: "The trial court is vested with a broad discretionary power to shape and fashion injunctive relief to fit particular facts, circumstances, and equities of the case before it." Under the evidence in this case, no abuse of the trial court's discretion has been shown.

## II.

### Alleged Conflict With The Levee District Reclamation Plan

Plaintiffs contend that the Rupp project was a private reclamation which violated the plan of reclamation of Halls Levee District and that the levee district Board of Supervisors "was the master agency of the District and all programs of reclamation must be instituted by it and under its supervision and control." Their argument continues that since defendants sought no permission from the Board of Supervisors and received none, their private reclamation merits condemnation.

It should be noted preliminarily that the Board of Supervisors have never made objection to the Rupp project despite full knowledge on their part that the project was in progress. It is also to be noted that the Board of Supervisors took no appeal from the Circuit Court and have filed no brief nor made any appearance in this court. No showing has been made by plaintiffs that they have standing to urge rights on behalf of the Board of Supervisors, although it is only fair to say also that defendants have raised no point in that regard. We will assume for the purpose of this case, without deciding, that plaintiffs do have standing to raise this point.

Nevertheless, the point must be ruled against plaintiffs. The claim of authority which plaintiffs make on behalf of the Supervisors rests upon statutory Sec. 245.095 (all statutory references are to RSMo 1969). However, all of Chapter 245 must be read in conjunction with Chapter 244 which provides for private drainage rights. See *Dillen v. Remley*, 327 S.W.2d 931 (Mo.App.1959). Section 244.010 gives the owner of any swamp land the right to drain and protect his property for agricultural purposes whether his land be "situated within or without any drainage or levee district." Thus our statutory law continues to recognize and supplements Rupp's common law right to reasonably protect and develop her land for agricultural purposes. *Young v. Moore*, 236 S.W.2d 740 (Mo.App. 1951).

The evidence in this case shows that Rupp's exercise of her said rights does not conflict with or threaten the levee dis-

trict or its plan of reclamation. Williamson testified without any contradiction that the Rupp project did not adversely affect in any way the levee district plan of reclamation. Moreover, the Board of Supervisors called two expert witnesses from the United States Corps of Engineers who supported Williamson in that view.

The cases cited by plaintiffs are readily distinguishable. The first of those cases is *Drainage District No. 48 of Dunklin County v. Small,* 318 S.W.2d 497 (Mo. banc 1958) where the defendant had built a private levee and attached it to the public levee. Defendant's private levee obstructed an easement which had been acquired by the drainage district and very substantially hindered the flowage of water for which the easement was intended. There was also evidence that the private levee interfered with and had caused serious damage to the public levee. No similar facts exist in the instant case.

The other case principally relied upon by plaintiffs is *Halls Levee District of Buchanan County v. Hauber,* 461 S.W.2d 16 (Mo. App.1970). In that case, defendant constructed a private dam on the levee district right of way easement without authority from the district. That private construction was found to be to the detriment of the levee district reclamation plan, and a mandatory injunction therefore issued for its removal. Those facts bear no resemblance to those here.

No error appearing, the judgment is affirmed. Costs will be divided one-half against plaintiffs and one-half against defendant Rupp.