**Lester COHEN and Julius Cohen, Appellants,**

v.

**J. Raymond BRUMMET and Freda M. Brummet, his wife, and Wyman Basinger, Sheriff of Cole County, Missouri, Successor Trustee, Respondents.**

**No. WD 32636.**

Missouri Court of Appeals,
Western District.

June 8, 1982.

William A. Seibel, Jefferson City, for appellants.

Thomas D. Graham, Jefferson City (Graham & Graham, Jefferson City, of counsel), for respondents.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

Plaintiffs filed suit on September 5, 1980, to enjoin the foreclosure sale of real estate under a deed of trust securing a note given to defendants Brummet, and to cancel those instruments. As grounds for relief, it was pleaded that plaintiffs had purchased the real estate and remodelled it for which a construction company made claim for labor and materials in excess of sums borrowed by plaintiffs for remodelling purposes, and they were experiencing difficulty in procuring additional financing. J. Raymond Brummet had a contract for procuring lease tenants for the premises, and told plaintiffs he would procure the additional $42,000 financing on his credit, and preliminary thereto, prepared and submitted to plaintiffs the note and deed of trust in issue, requesting them to sign it. Brummet said he would return the note and deed of trust to plaintiffs if he could not procure the financing through his own credit; he did not procure the financing and did not return the instruments to plaintiffs, but without their knowledge or consent, had the deed of trust acknowledged and placed of record. It is pleaded further that the deed of trust was not acknowledged before a notary public, and was without consideration; that Brummet had approached plaintiffs with a proposed sale of the premises, having a buyer whom he represented, but they advised him they did not want to sell at the price offered. The Brummets admitted that they were beneficiaries of the deed of trust, and it was recorded, but denied the above allegations, and pleaded further by amended answer, these matters: That plaintiffs entered into a lease agreement authorizing Brummet to lease the property known as the Kress Building in Jefferson City, Missouri; that five tenants were procured, and there were prospective tenants for the mezzanine, and there was an empty space; that the total rental for 10 years was $42,900 per year, and that the $42,000 note (here in issue) was executed for his compensation for procuring the leases; that because the empty space and mezzanine were not rented, the note was credited in the amount of $4,816.

A hearing was had on the prayer for temporary injunction before the Honorable James T. Riley, who issued it on September 18, 1980. Thereafter, Judge Riley was disqualified on Brummets' motion, and the Honorable Bryon L. Kinder was assigned the case. The Cohens then disqualified Judge Kinder, and the Honorable George J. Pruneau was assigned the case by order of the Supreme Court. Trial began before

Judge Pruneau on the issue of the request for permanent injunction on February 6, 1981. By docket entry on that date, the court found the issues in favor of defendants and dissolved the temporary injunction. After trial, motions were overruled and a notice of appeal was timely filed on March 26, 1981, numbered WD 32636. No order of disqualification of any trial judge is made a subject of appeal, so the matter is not before this court.

The gist of Lester Cohen's testimony was this: In the remodeling of the Kress building, there was a cost overrun of about $42,000 to the Schell Construction Company, which demanded payment and filed suit to collect the amount of the overrun. The Cohens had borrowed as much as the finance company would allow, and the bank would not make the additional loan. Brummet was aware of that, and came forward and said he would obtain the money, "and we signed the promissory note and deed of trust for approximately 42,000 so he would be protected." Lester denied that it was correct that the note and deed of trust were given for the payment of the real estate commission as claimed by Brummet, and testified that the commission was to be paid on the income after it was collected. "Q. Now, did you at any time agree that you would negate the terms of the lease and pay Brummet by virtue of the deed of trust with all commissions in advance? A. No, never, it's never in history that anyone has paid real estate commission in advance; all five tenants could have moved out." Five executed leases were introduced into evidence, each for a ten year term and aggregating $38,164 per year. Each lease contained the provision: "*Broker.* The parties recognize that Brummet Realty Company is the procurer of this lease and the Lessor agrees to pay said Brummet Realty Company a brokerage commission equal to ten (10%) percent of the total rental collected during the initial ten year lease term." (There was included in an exhibit of rental amounts square footage of an empty space and a mezzanine, which totalled $4,816 per year, the amount Brummet claims was credited on the $42,000 note.) A separate

leasing agreement was executed to Brummet by the Cohens providing that he should have a commission of 6% to 10% of the total lease for his efforts in finding lessees.

It was Julius Cohen's testimony that he and his brother found the tenants of the building, and afterward Brummet did the negotiating for leases. He never agreed to pay Brummet a 10% commission of the total leases in advance. The note and deed of trust were given Brummet to secure him for getting credit to pay off the liens on the building (to Schell Construction Company) for the cost overrun. The note and deed of trust were to be returned to the Cohens if Brummet did not get the money and did not pay Schell Construction, whose bill as rendered was $40,500, not $42,000, the extra being for incidental expenses they would have.

J. Raymond Brummet testified: He has been in the real estate business for 27 years, with a general brokerage business, both residential and commercial. He has a small construction company, has been involved in the development of subdivisions and the construction of homes and small buildings. The Cohens approached him to be their sole agent, telling him they had an option to purchase the Kress building since February, and had been trying to do something with it for 4 or 5 months, but were unable to do so. He agreed to help them, and his fees were agreed to vary between 6% and 10%, according to what effort he had to put out, and what he had to do in order to turn an empty store into one that was in operation. The fee was to be for the total amount of the lease, the total number of years. He designed the development and employed an architect to extend his designs for a building permit. He employed a competent contractor, after discussion with the Cohens. He oversaw the building of the complex, handled the showing of the property to prospective tenants, and when he and his sales people had one, the dollar amount per square foot and the term of the lease; then it was taken to the Cohens to their attorney for the final drawing of the lease. The final approval of the lease was between the

Cohens and their attorney. Brummet or one of his employees picked up the leases and took them to the prospective tenant to sign, then they were delivered to the Cohens.

Prior to the time Brummet took the note and deed of trust to the Cohens, they had a conversation about the fact that they were having difficulty securing money. Because he was sitting in a rather unsecured position and had put out 6 or 7 months of very hard work, both in leasing and in construction and design, and for his protection, he asked them if they would sign the note and deed of trust, and they agreed to do so. In arriving at the figure of $42,000, which was rounded off, there was included the two empty spaces for which there were prospective suitable tenants, and the rentals for these included spaces (being unrented) were credited upon the note later ($4,816). Brummet never did have any discussion with either of the Cohens concerning his procuring financing on his own signature or his own financial picture. He just sat in when they borrowed the original construction money from the Central Trust Bank. The final bill from Schell Construction came in May, after the Cohens signed the note and deed of trust in January, 1979.

As above set forth, the evidence sharply conflicts as to the purpose for which the note and deed of trust were given by the Cohens. Additionally, the listing agreement for leasing the premises provides that the commissions shall apply to the *total* lease price, and it says nothing about commissions being paid when rents are collected. Although the leases provide that Brummet was the procurer and that his 10% commission of total rent collected during the initial ten year lease terms, Brummet was not a party to the leases. In these circumstances, the court must accord due deference to the trial court's opportunity to see and hear witnesses, to judge their credibility and to reconcile conflicts in the testimony. *Zoellner v. Carty*, 585 S.W.2d 289, 291[3] (Mo.App.1979). It does not appear that the judgment is without substantial evidence to support it, or is against the weight of the evidence, or that it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

By their Points II and III, the Cohens attempt to present as error on this appeal the matter of dissolving the temporary injunction. The appeal, of course, is from the judgment denying the requested permanent injunction. These points will not be noticed further because an order dissolving a temporary injunction is not appealable. See *Johnson v. Board of Education*, 65 Mo. 47, 48 (1877); *Rose v. Township Board of Combs Tp.*, 163 Mo. 396, 63 S.W. 698 (1901); and compare *Frimel v. Humphrey*, 555 S.W.2d 350, 352[1–3] (Mo.App.1977), and cases cited. In this connection, it was not error to strike from the record on appeal the transcript of the hearing on the temporary injunction.

On the day set for the foreclosure sale, the Cohens gave notice of their intention to redeem the property. Then, a two count petition was filed to set aside the sale. Count I alleged that the notice of sale did not comply with § 443.320, RSMo 1978, in that it did not correctly describe the grantors, i.e., Lester Cohen's name was inserted as Lester COEHN. This was obviously a typographical error which could mislead no one. It is further alleged that the description of the premises was erroneous, or how it would affect the Cohens, if so, nor is any case cited which would support either contention. Besides, the validity of the foreclosure sale was impliedly admitted by the Cohens when they sought to redeem the property sold. *St. Bethel Missionary Baptist Church, Inc., v. St. Louis Bldrs., Inc.*, 388 S.W.2d 776, 780[6] (Mo.1965).

In Count II of the petition, the Cohens made basically the same allegations as they had in the injunction suit, which was ruled against them by Judge Pruneau. They could not relitigate those matters. In this count, they asked approval of a redemption bond, and tendered one in the amount of $20,000. Judge McHenry, before whom this matter came, rejected the tender for insufficiency, and the Cohens never did post a bond within the 20 day statutory

time, which bond was set by Judge McHenry at $69,809.72. The Cohens say that he was in error in including interest in accruing prior to sale, arguing that the purchaser, Brummet, did not pay that accrued interest when he bid in the property. Obviously, the amount of the bond should be sufficient to pay off all the indebtedness, and interest prior to and subsequent to the redemption. § 443.420 so provides. *Krahenmann v. Schulz,* 233 Mo.App. 852, 109 S.W.2d 889, 891 (1937), holds contrary to the Cohens' contention. Judge McHenry did not err in dismissing their second petition to set aside the sale and approval of the bond.

The judgments appealed from are affirmed.

All concur.