Alfred L. **JENKINS, Plaintiff–Appellant,**

v.

Cecil G. **THYER, Anna Laura Thyer, David B. Thyer, and Jimmy Hopkins, Successor Trustee, Defendants–Respondents.**

No. 15210.

Missouri Court of Appeals, Southern District, Division One.

Nov. 30, 1988.

John R. Lewis, Lewis & Stevens, P.C., Springfield, for plaintiff-appellant.

Emory L. Melton, Cassville, Harold L. Caskey, Butler, Jeri Leigh Caskey, Alton, for defendants-respondents.

HOLSTEIN, Chief Judge.

Alfred L. Jenkins appeals from a judgment of the Circuit Court of Barry County

in which the trial court refused to enjoin a foreclosure sale commenced by the defendants under a power of sale and a deed of trust.

On appeal Jenkins raises two points. In his first point, the complaint is that "defendants failed to prove" that a default occurred and that an acceleration of the note took place. In his second point, Jenkins asserts the notice of foreclosure required by statute was not given. We affirm.

■ We are not convinced Jenkins has preserved the first question for our consideration. Among the essential, controverted facts asserted in his petition and denied by defendants' answer are that plaintiff was in "complete compliance" with the payment terms of the note,[1] that defendants had unjustifiably commenced foreclosure, and that defendants had failed to give plaintiff proper notice of the sale. Generally, in a suit for injunctive relief, the plaintiff has the burden, insofar as essential facts are controverted, of establishing his right to an injunction. *Cook v. Rupp,* 565 S.W.2d 833, 837 (Mo.App.1978); 43A C.J.S. *Injunctions* § 210 (1978). The point relied on asserts in effect that the defendants failed to prove Jenkins' noncompliance with the "terms and conditions of the deed of trust." Jenkins cites no authority in support of his point relied on which suggests that there is a shifting of the burden of proof. Citation of authority is required under each point relied on. Rule 84.04(d).[2] Allegations of error not properly briefed are not preserved for review on appeal. Rule 84.13(a).

Nevertheless, from the argument portion of the brief, it is discernable that Jenkins' complaint is that the judgment is without substantial evidence to support it, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc

1976); *Cohen v. Brummet,* 636 S.W.2d 126, 129 (Mo.App.1982). We review the case on that basis. In reviewing the sufficiency of the evidence, an appellate court gives deference to the trial court's superior opportunity to judge the credibility of the witnesses, and the trial judge may believe all, part, or none of the evidence. Rule 73.01(c)(2). *Best v. Culhane,* 677 S.W.2d 390, 393 (Mo. App.1984).

The Jenkins purchased a 160–acre tract from the Thyers in Barry County in March of 1981. The purchase price was $66,500, of which $5,000 was paid in cash. The balance was evidenced by a promissory note. On March 10, 1981, Jenkins and his wife executed the note in the principal sum of $61,500 with interest at 10% annually. The first payment was $6,500 with interest due on September 10, 1981. Thereafter, the note was payable in installments of $5,500 plus accrued interest on March 10 of each year until paid in full. The note was secured by the Jenkins' concurrently executed deed of trust to the 160–acre tract in Barry County.

The note contained the following clause: "On failure to pay in full any or all of the installments within 30 days of the due date, the whole note shall, at the option of the holder hereof, at once become payable, without notice."

The deed of trust was on a printed form which recites:

[The Jenkins] agree (1) to pay all present and future taxes and assessments against said property before same becomes delinquent, (2) to keep the buildings on said land insured against fire in the sum of *Ins. sum* [typed] Dollars and against wind storms in the sum of *Ins. sum* [typed] Dollars and keep the insurance policies properly assigned and in possession of [the Thyers] with power to collect any money becoming due thereon and apply on said note ... and (4) to keep

---

**1.** As will be discussed hereafter, the "terms of the note" include not only the note itself but any other agreements entered into contemporaneously and connected to the note.

**2.** Rule references are to Missouri Rules of Court (19th ed. 1988) and unless otherwise indicated, all references to statutes are to RSMo 1986.

said premises in good condition and repair and not permit any waste or substantial deterioration

... [S]hould the [Jenkins] fail or refuse to pay the said debt ... or in keeping any of said agreements, THEN the whole shall become due and payable ... and the [trustee] ... may proceed to sell the property....

In November of 1984, David Thyer wrote Jenkins' attorney complaining that the insurance had lapsed, that the house was in disrepair, and that he had received no reply to his letters directed to Jenkins' addresses in Cassville and Alaska. Jenkins' attorney wrote Thyer stating that he had conferred with Jenkins and that insurance would be obtained and repairs made on the house.

By December of 1984, the house located on the property had fallen "desperately in need of repair." No policy or proof of policy of wind or fire insurance was provided by the Jenkins to the Thyers. Taxes for 1983 and 1984 were unpaid as of January, 1985.

On January 7, 1985, David Thyer wrote a letter to the named trustee, Tom Cardin, directing him to "start foreclosure proceeding's [sic] immediately and allow no extra time." Although he had no copy of the letter, Thyer testified he notified Jenkins in writing that he intended to "accelerate the note." In late January or early February, Jenkins telephoned Thyer asking why the note was being accelerated. Thyer told him the property was deteriorating, the insurance on the property had lapsed, and taxes were unpaid.

On March 13, 1985, Barry County Sheriff Jimmy Hopkins, as successor trustee, published a first notice that he intended to conduct a foreclosure sale on April 12, 1985. The notice contained all the information required by § 443.320 and contained the following statement: "[D]efault was made and still continues in the payment of said Note." Sometime after March 10, 1985, Thyer received two checks from Jenkins, one for $5,500 and one for $3,700. Sometime thereafter, Jenkins' attorney gave Thyer's attorney a check for $50.

On April 11, 1985, Jenkins filed his petition seeking a restraining order and injunction. His petition described the note and deed of trust and the publication of notice. Jenkins further asserted that he was in "complete compliance" with the promissory note. No mention is made of his compliance with the provisions of the deed of trust. The petition alleged improper notice of the foreclosure sale but failed to allege any facts supporting that assertion. A temporary restraining order prohibiting the foreclosure sale was issued by the court.

The answer denied Jenkins' compliance with the payment terms of the note and further alleged plaintiff's noncompliance with the terms of the deed of trust. A counterclaim was later filed seeking a judicial foreclosure.

At trial Jenkins' only evidence was the testimony of the successor trustee who identified the notice which had been published. He also presented a stipulation that payments had been made on the principal and interest through March 10, 1985, although the precise date on which the payments were tendered is unclear from the record. The trial court entered judgment declining to grant injunctive relief to Jenkins and dismissed the counterclaim for judicial foreclosure without prejudice. Jenkins appeals that portion of the judgment denying him injunctive relief.

■ In the argument under Jenkins' first point, he complains that there is no substantial evidence showing that he was in default and that an acceleration had taken place. All parties agree that the acceleration clause in the note was not relied on by the Thyers. The acceleration clause in the note only applied to note payments which were not in default until thirty days following March 10, 1985. If an acceleration occurred, it was because of the acceleration provisions contained in the deed of trust.

Jenkins does not suggest that a deed of trust may not have separate provisions for acceleration. Where the parties to a note

contemporaneously execute another written contract, such as a deed of trust, which is connected with the note by direct reference or by necessary implication, the two instruments should be considered together as the entire contract. *Brooks v. Sullivan,* 728 S.W.2d 298, 300 (Mo.App.1987). The terms of a negotiable instrument may be modified or affected by any other written agreement executed as part of the same transaction. § 400.3–119(1). Contradictions in the two instruments must be harmonized if reasonably possible. *Reese v. First Missouri Bank & Trust Co.,* 664 S.W.2d 530, 535 (Mo.App.1983). Accordingly, the note was affected by the acceleration clause in the deed of trust. *See U.C.C.* § 3–119, comment 3 (1987).

The evidence recited above demonstrates that when foreclosure was commenced, the buildings on the property had fallen into a state of disrepair, there was no insurance on the property, and taxes were unpaid and delinquent for the two years prior to 1985. Notwithstanding that evidence, Jenkins argues that the Thyers were not entitled to foreclosure because there was no "unequivocal affirmative act to invoke acceleration." *See Capital City Motors, Inc. v. Thomas W. Garland, Inc.,* 363 S.W.2d 575, 578 (Mo.1962).

The evidence in this case, which the trial court was entitled to believe, supports a finding that in January of 1985, Thyer informed the trustee to foreclose, wrote a letter indicating his intent to accelerate the note, and, in a telephone conversation with Jenkins during the same month, informed Jenkins of the reasons he was exercising the right to accelerate payments on the note. The uncontroverted testimony regarding the letter and the telephone conversation, followed by the commencement of the foreclosure, are clear and unequivocal acts invoking the acceleration clause contained in the deed of trust. Jenkins argues that because Thyer was unable to define "acceleration" when being cross-examined, his testimony of having informed Jenkins of acceleration is unworthy of belief. We defer to the trial court's assessment of Thyer's credibility. Rule 73.-01(c)(2).

Jenkins complains that the invocation of the acceleration clause in the deed of trust was not accompanied by an opportunity to correct the default. The acceleration clause in the deed of trust does not require the Thyers to give Jenkins an opportunity to cure default as a precondition to exercising that right. In addition, Thyer gave Jenkins ample notice and opportunity to repair the premises, pay taxes, and obtain insurance before directing that the foreclosure procedure be commenced. The tender of only the current arrears and principal, when the entire amount of the note was declared due under the acceleration clause of the deed of trust, did not cure the default and deprive the trustee of the authority to proceed with the sale. *Thielecke v. Davis,* 260 S.W.2d 510, 512 (Mo.1953).

Even assuming Jenkins was not required to tender the full amount of principal and interest due under the note, to prevail he must show that he cured the default prior to acceleration by paying taxes, making repairs, and obtaining insurance. Long after acceleration occurred, and even after trial, taxes remained unpaid. Taxes were finally tendered by Jenkins before entry of judgment. He did not and, so far as the record shows, has not obtained an insurance policy or made necessary repairs to the buildings.

The deed of trust did not state the amount of insurance required on the premises. Even so, the deterioration of the premises and the failure to pay taxes by December 31 in the year they were due jeopardized the entire estate and amounted to defaults justifying an exercise of the acceleration and foreclosure provisions in the deed of trust. *See North Star Apartments v. Goppert Bank & Trust Co.,* 657 S.W.2d 253, 258 (Mo.App.1983).

Jenkins further argues that by inference from the original purchase price in

1981, this court should conclude that the 1985 value of the "raw land," without the improvements, far exceeds the amount due on the note and thus the failure to provide any insurance and failure to maintain the structures in repair are "mere trifles" about which the court should not concern itself. There is no direct evidence as to the value of the raw land or the improvements at the time the foreclosure was commenced. Also, taxes had not been paid at that time. The threat to the security caused by the deterioration of the house and nonpayment of taxes was significant. Thus, we cannot conclude that Jenkins' defaults were mere trifles.

■ Jenkins' second point attacks the notice of the foreclosure sale. His point relied on asserts that the notice of sale scheduled for April 12, 1985, was not given as required by §§ 443.310, 443.320 and 443.325.3. Jenkins sought and obtained a temporary restraining order. There was no sale on the scheduled date or thereafter. Of necessity, a new notice will be required for any intended sale in the future. Consequently, it is impossible for Jenkins to have suffered any prejudice as a result of inadequate notice or failure to give notice of the intended sale. Obviously, when no sale occurs, the timeliness and sufficiency of the notice of such sale is moot.

Neither of Jenkins' points have merit. He makes other complaints in the argument portion of his brief regarding his right to redeem the mortgaged property. §§ 443.400 and 443.410. As we read the trial court's judgment, Jenkins' right to redemption by a payment of the full amount of principal, interest, and expenses due is not in jeopardy. The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.